# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JACK WADE FLETCHER, )
)
        Plaintiff, )
)
v. ) Case No. CIV-07-338-SPS
)
JEROME BURKHOLTER and BOARD )
OF COUNTY COMMISSIONERS OF )
McINTOSH COUNTY, OKLAHOMA )
)
        Defendants. )

## OPINION AND ORDER REGARDING
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This is an action for deprivation of civil rights pursuant to 42 U.S.C. § 1983 and for negligence pursuant to Oklahoma law. The Plaintiff claims he was illegally arrested and jailed because of materially misleading information contained in an affidavit provided by a McIntosh County Sheriff's Deputy (the Defendant Jerome Burkhalter, who is erroneously referred to in the style of the case as "Burkholter") in support of an information and arrest warrant. All Defendants sought summary judgment. The Plaintiff consented to the entry of summary judgment in favor of the Defendant Terry Jones, Sheriff of McIntosh County, Oklahoma, but objected to the Motion for Summary Judgment of Defendant, Jerome Burkhalter, and Brief in Support [Docket No. 42] and the Motion for Summary Judgment of Defendant Board of County Commissioners of McIntosh County, Oklahoma, and Brief in Support [Docket No. 44]. For the reasons set forth below, the Court finds that the Board's motion should be granted but that Burkhalter's motion should be denied at least in part.

## A. BACKGROUND

The Plaintiff was charged by criminal information with obtaining property by false pretenses in the District Court of McIntosh County on August 18, 2005. The charge resulted from an investigation initiated by Burkhalter in 2004 after receiving a complaint that an individual named "Jack Fletcher" had sold real property he did not own to James and Judith Gollhardt for ten thousand dollars. Burkhalter ran the name "Jack Fletcher" through the Oklahoma Department of Public Safety and obtained, *inter alia*, drivers license information specifically identifying the Plaintiff. But Burkhalter did not put this information in his incident report dated October 5, 2004, which simply identified the perpetrator as "Jack Fletcher."

Burkhalter was transferred to a different shift shortly thereafter and had no further involvement in the investigation. But at some point the Plaintiff's personal information was added to the incident report, and the District Attorney decided to charge him with the crime. An affidavit was prepared to support the charge and the issuance of a warrant for the Plaintiff's arrest. The affidavit included a criminal case style that specifically identified the Plaintiff as the defendant but elsewhere referred more generally to "Jack Fletcher." Burkhalter signed the affidavit, *inter alia*, urging the state court judge to "issue a finding of fact that probable cause exists to believe that a crime has been committed and that there is probable cause to believe that the defendant above named committed that crime." The judge made the findings and issued a warrant for the Plaintiff's arrest on August 18, 2005.

On February 26, 2006, the Plaintiff was stopped for a traffic violation in Porter, Oklahoma. Because of the outstanding warrant, the Plaintiff was arrested and held overnight in the Wagoner County jail. He was transported to the McIntosh County jail the next morning. That afternoon, the Plaintiff appeared before the state court judge and was advised of the charge against him. The Plaintiff was released after posting bond and hired an attorney to defend himself. But it was soon discovered that the "Jack Fletcher" who defrauded the Gollhardts was not the Plaintiff (according to DPS: Jack Wade Fletcher, 814 North Division, Coweta, Oklahoma, date of birth October 19, 1970), but instead Jack *Erwin* Fletcher, who according to the Gollhardts was in his seventies (although it turned out he was well into in his eighties) and lived in a rural mobile home in Eufaula, Oklahoma. The charges against the Plaintiff were dropped and this action ensued.

The Gollhardts contend they provided specific identifying information about Jack Erwin Fletcher (including, *inter alia*, his correct middle initial, his post office box address, his cell phone number, his tag number and the make of his vehicle, a map to his residence and a written summary of the entire transaction) to Burkhalter at the time of his initial investigation. The incident report provided by the McIntosh County Sheriff's Department confirms this, although Burkhalter claims he does not remember receiving any information from the Gollhardts other than the name "Jack Fletcher." Burkhalter does admit that in addition to the drivers license information about the Plaintiff, he obtained vehicle information from DPS (which matched the vehicle information provided by the Gollhardts) on a Jack Fletcher, 1 S.E. 55th, Oklahoma City, Oklahoma 73129. Nevertheless, it was the DPS

information about the Plaintiff that belatedly found its way into Burkhalter's incident report and was the sole basis for the charges against the Plaintiff.

## B. ANALYSIS

Burkhalter contends he is entitled to summary judgment because his actions caused no violation of the Plaintiff's Fourth Amendment rights. He argues that the statements made in his affidavit were true, and that any absence of probable cause for the Plaintiff's arrest was the responsibility of the District Attorney (who initiated the charges) or the District Court (which found probable cause and issued the arrest warrant). Burkhalter also contends he is entitled to qualified immunity, and that the Plaintiff may not recover punitive damages because there is no evidence he acted recklessly or maliciously. The Board contends it is entitled to summary judgment because it is immune to any negligence claim under the Oklahoma Governmental Tort Claims Act, 51 Okla. Stat. §§ 151-200 (the "GTCA").[1] The Court finds that the Board is entitled to summary judgment, but that Burkhalter is not

---

[1] The Plaintiff initially sought relief pursuant to 42 U.S.C. § 1983 for violations of his federal constitutional rights pursuant to the Fourth, Fifth, Eighth and Fourteenth Amendments of the U.S. Constitution, including claims for violation of the Equal Protection Clause and the Cruel and Unusual Punishment Clause. He also purported to sue Burkhalter both personally and in an official capacity. However, the Plaintiff has abandoned all claims against the Board except for negligence pursuant to the GTCA, and all claims against Burkhalter except for personal liability pursuant to Section 1983 for violations of his rights under the Fourth and Fourteenth Amendments. Moreover, it is clear that the Plaintiff's Section 1983 claim for wrongful arrest and pretrial detention arises solely under the Fourth Amendment. *See, e. g., Pierce v. Gilchrist,* 359 F.3d 1279, 1287 n.5 (10th Cir. 2004) ("Because Taylor was exonerated before trial, the case [*Taylor v. Meacham,* 82 F.3d 1556 (10th Cir.), *cert. denied,* 519 U.S. 871 (1996)] involved only the Fourth, and not also the Fourteenth Amendment."). The summary judgment motions are therefore granted to that extent, and the Court will focus herein upon the Fourth Amendment claim against Burkhalter under Section 1983 and the negligence claim against the Board under the GTCA.

because there are genuine issues of material fact regarding the Plaintiff's Fourth Amendment claims under Section 1983. *See* Fed. R. Civ. P. 56(c) ("The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").

### 1. The Plaintiff's Negligence Claim Against The Board Under The GTCA

The Plaintiff's sole claim against the Board is for negligence, *i. e.*, he contends that Burkhalter negligently identified him as the perpetrator of the fraud against the Gollhardts in his affidavit and that the Board is liable for such negligence because Burkhalter was acting within the scope of his employment at the time. *See generally* 51 Okla. Stat. § 153(A) ("The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state."). The Board contends it is immune on such a claim because preparation of the affidavit was a prosecutorial act, *see* 51 Okla. Stat. § 155(2) ("The state or a political subdivision shall not be liable if a loss or claim results from . . . [j]udicial, quasi-judicial, or prosecutorial functions[.]"), and because any negligence by Burkhalter amounted to misrepresentation. *See* 51 Okla. Stat. § 155(17) ("The state or a political subdivision shall not be liable if a loss or claim results from . . . [m]isrepresentation, if unintentional[.]").

As the Plaintiff notes, the Board may be held liable under the GTCA for a false arrest made by a county officer acting in good faith and within the scope of his employment. *See, e. g., Overall v. Oklahoma*, 1995 OK CIV APP 107, 910 P.2d 1087. But Burkhalter did not arrest the Plaintiff; instead, he merely caused the Plaintiff's arrest by failing to include in his affidavit information that would have vitiated probable cause, *i. e.*, the information provided by the Gollhardts that made clear the Plaintiff was not the perpetrator. The Plaintiff has cited no authority allowing a negligence claim for wrongfully causing an arrest. On the contrary, the only claim for wrongfully causing an arrest of which the Court is aware is malicious prosecution, which the Plaintiff has not asserted and which could not be asserted against the Board in any event. *See Parker v. City of Midwest City*, 1993 OK 29, 850 P.2d 1065, 1068 ("Parker cannot recover damages from the City on the theory of malicious prosecution. If Officer Strong's actions were in bad faith he was acting outside his scope of employment, and thus the City is not liable. 51 O.S. 1991 § 153. If, however, Strong was acting in good faith and hence within the scope of employment, Parker cannot prove his case because he cannot establish the necessary element of malice."). Consequently, the Board is entitled to judgment as a matter of law, and its Motion for Summary Judgment of Defendant Board of County Commissioners of McIntosh County, Oklahoma, and Brief in Support [Docket No. 44] must therefore be granted.

### 2. The Plaintiff's Section 1983 Claim Against Burkhalter

The parties have debated the merits of the Plaintiff's claim under Section 1983 as if it were analogous to a common law claim for false arrest. But the Plaintiff was arrested

pursuant to legal process, *i. e.*, a judicially-issued arrest warrant, so his Section 1983 claim would seem to be more analogous to a common law claim for malicious prosecution. *See Wilkins v. DeReyes,* 528 F.3d 790, 798-99 (10th Cir. 2008) ("Depending on the circumstances of the arrest, a plaintiff can challenge the institution of legal process as wrongful in one of two ways. If arrested without a warrant-and thus triggering the Fourth Amendment require[ment of] a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest-a plaintiff can challenge the probable cause determination made during the constitutionally-required probable cause hearing. Or, if arrested pursuant to a warrant, plaintiff can challenge the probable cause determination supporting the warrant's issuance. Either way, the allegation would state a Fourth Amendment violation sufficient to support a § 1983 malicious prosecution cause of action.") [internal quotation marks and citations omitted]. *See generally Wallace v. Kato*, 549 U.S. 384, 389-90 (2007) ("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*-when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process.") [emphasis in original; citations omitted]. Burkhalter complains there has been no previous mention of malicious prosecution in this action, but acknowledges it is a Fourth Amendment violation for a law enforcement officer "to knowingly or recklessly omit from an arrest affidavit information which, if

included, would have vitiated probable cause." *Stewart v. Donges,* 915 F.2d 572, 582-83 (10th Cir. 1990). Such a claim under the Fourth Amendment is analogous to a common law claim for malicious prosecution. *See, e. g., Wilkins,* 528 F.3d at 799 ("In this case, Plaintiffs were detained pursuant to arrest warrants. At common law, the issuance of an arrest warrant represents a classic example of the institution of legal process. Plaintiffs' detention was thus preceded by the institution of legal process, triggering the malicious prosecution cause of action. In challenging that process by alleging the officers knowingly supplied false information in affidavits for the warrants, Plaintiffs based their malicious prosecution claim on the Fourth Amendment right against unreasonable seizures.") [citations omitted]. Thus, although the Plaintiff's pleadings do not specifically mention malicious prosecution, the Court will nevertheless address his Section 1983 claim as if analogous to that common law tort. *See, e. g., Mondragon v. Thompson*, 519 F.3d 1078, 1084 n.7 (10th Cir. 2008) ("The complaint does not explicitly plead a claim of malicious prosecution, *though it pleads facts that would support such a claim.* As we held in *Pierce*, however, it is not essential that the plaintiff use the words 'malicious prosecution' to describe his [] claim: Plaintiff's actual cause of action is for a constitutional violation under § 1983; the common law tort of malicious prosecution is relevant only as an analogy that is helpful in structuring the legal analysis. Plaintiff's failure to plead malicious prosecution as a cause of action is therefore not fatal to his action.") [emphasis added], *citing Pierce*, 359 F.3d at 1286 n.3 ("Ms. Gilchrist also complains that the amended complaint did not allege a claim for malicious prosecution, and that the district court therefore erred when it 'unilaterally injected the claim of malicious

prosecution' in its order of October 23, 2002. However, . . . Plaintiff's actual cause of action is for a constitutional violation under § 1983; the common law tort of malicious prosecution is relevant only as an analogy that is helpful in structuring the legal analysis. Plaintiff's failure to plead malicious prosecution as a cause of action is therefore not fatal to his action.").

Burkhalter contends he is entitled to summary judgment on the Plaintiff's Fourth Amendment claim because: (i) the information contained in his affidavit was true; (ii) there was probable cause for the Plaintiff's arrest; (iii) the decision by the district attorney to charge the Plaintiff, and the issuance of the arrest warrant by the state court judge, absolve him of any liability even if probable cause to arrest the Plaintiff was lacking; and, (iv) he is entitled to qualified immunity on the Plaintiff's claim under Section 1983. The Court finds that Burkhalter is not entitled to summary judgment on the Plaintiff's claim under Section 1983 and will address each of these contentions *seriatim*.

### a. The affidavit was materially misleading.

Burkhalter contends he committed no Fourth Amendment violation because the information contained in the affidavit was true. However, it is clear that Burkhalter's affidavit contains both false information and materially misleading omissions. Taken as a whole, the affidavit clearly states that the Gollhardts accused the Plaintiff of defrauding them. This was false; the Gollhardts made no mention whatever of the Plaintiff and in fact accused another "Jack Fletcher" (whom they identified specifically enough to differentiate him from the Plaintiff) of defrauding them. Burkhalter would apparently distinguish between the case

style at the top of the affidavit (which specifically named the Plaintiff as the defendant in a criminal case) and the body of the affidavit (which he contends mentions only "Jack Fletcher"). But this distinction is specious; the affidavit was given for purpose of charging and arresting the Plaintiff (not some other "Jack Fletcher"), and in any event the last sentence in the body of the affidavit refers directly to the Plaintiff, *i. e.*, the "defendant above named." Further, the affidavit was misleading for what it does not contain, *i. e.*, the identifying information provided by the Gollhardts, which would have indicated that the perpetrator of the crime was a much older man with a different middle initial and a different address. Burkhalter claims he does not remember receiving any information from the Gollhardts other than the name "Jack Fletcher" (although he does not otherwise attempt to refute James Gollhardt's affidavit to the contrary), but it is nevertheless clear that the information contained in his affidavit was *not* true.[2]

### b. There was no probable cause to arrest the Plaintiff.

Burkhalter also contends there was no Fourth Amendment violation because there was probable cause to arrest the Plaintiff. However, it is clear that Plaintiff was arrested *without* probable cause. "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual

---

[2] Burkhalter also claims that the information he was aware of pointed to the Plaintiff. This suggests that the Gollhardts were unable to identify who defrauded them and that Burkhalter himself did so through his investigation. But assuming the only information provided by the Gollhardts was the name "Jack Fletcher," the evidence of which Burkhalter was aware pointed no more to the Plaintiff than to any other "Jack Fletcher," *e. g.*, the one whose vehicle information was available to Burkhalter from DPS (which incidentally matched the information provided by the Gollhardts).

committed the crime." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996), *citing* Fed. R. Crim. P. 4 *and Wong Sun v. United States,* 371 U.S. 471, 481 n.9 (1963) (noting that the requirements of Rule 4 derive from the Fourth Amendment). "Where false statements have been included in an arrest warrant affidavit, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit. In a case involving information omitted from an affidavit, the existence of probable cause is determined 'by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.'" *Id.*, *citing Franks v. Delaware,* 438 U.S. 154, 155-56 (1978), and *quoting Stewart*, 915 F.2d at 582, n.13. If the specific references to the Plaintiff in the affidavit are ignored as false, probable cause for his arrest is clearly lacking, as there would be nothing left in the affidavit to indicate that he was the "Jack Fletcher" who defrauded the Gollhardts. But even if the specific references to the Plaintiff are not ignored, the identifying information provided by the Gollhardts clearly would have vitiated any probable cause to arrest the Plaintiff if it had been included in the affidavit, *i. e.*, the additional information would have made clear that the perpetrator was a much older man than the Plaintiff, with a different middle initial (*i. e.*, "Jack E. Fletcher") and that he had a different address. As discussed above, Burkhalter disputes that he was aware of the identifying information provided by the Gollhardts, but it is nevertheless clear that the Plaintiff was arrested *without* probable cause.

### c. Burkhalter caused the Plaintiff's arrest.

Burkhalter further contends that he is absolved of any liability for the Plaintiff's arrest because of the intervening actions of others, *i. e.*, the decision of the district attorney to prosecute the Plaintiff and the issuance of the warrant to arrest the Plaintiff by the state court judge. However, neither the district attorney's decision to file charges against the Plaintiff nor the state court judge's issuance of the warrant for the Plaintiff's arrest absolves Burkhalter from any liability for violating the Plaintiff's rights under the Fourth Amendment if, for example, he "knowingly or recklessly omit[ted] from [his] affidavit information which, if included, would have vitiated probable cause." *Stewart,* 915 F.2d at 582-83. "If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors, or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded." *Pierce*, 359 F.3d at 1292 [emphasis in original omitted], *quoting Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988). Without Burkhalter's misleading affidavit, there was nothing to support the district attorney's prosecution of the Plaintiff, or the state court judge's issuance of the warrant for the Plaintiff' arrest. Burkhalter may therefore not escape liability on this basis for any Fourth Amendment violations resulting from the affidavit. *See Pierce,* 359 F.3d at 1292 ("[Section] 1983, by its terms, applies not only to a person who 'subjects,' but also to any person who 'causes to be subjected . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.' This suggests that Congress was concerned not just

with the officer who formally initiates the process that leads to an unconstitutional seizure, but to all those who were the "cause" of deprivations of constitutional rights. This Court has previously held that officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions."), *citing Robinson v. Maruffi*, 895 F.2d 649, 655-56 (10th Cir. 1990).

### d. Burkhalter is not entitled to qualified immunity as a matter of law.

Burkhalter finally contends that he is entitled to qualified immunity as a matter of law on the Plaintiff's claim under the Fourth Amendment. In this regard, the Court must first determine: (i) whether the facts taken in the light most favorable to the Plaintiff make out a constitutional claim; and, (ii) whether the constitutional right asserted by the Plaintiff was clearly established at the time of the violation. *See, e. g., Cortez v. McCauley,* 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc), *citing Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). If the facts adduced by the Plaintiff *do* make out an actionable claim on a clearly established constitutional right, the Court must then determine if there is any factual dispute as to whether Burkhalter's conduct "was objectively reasonable in light of clearly established law at the time it took place." *Pierce,* 359 F.3d at 1297, *citing Anderson v. Creighton,* 483 U.S. 635, 639-40 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). If the answer to any of these questions is no, Burkhalter would be entitled to qualified immunity as a matter of law and summary judgment would be appropriate. However, the Court finds that the Plaintiff has made out an actionable case for violation of a clearly established constitutional

right, and that there is a genuine issue of material fact regarding the reasonableness of Burkhalter's actions. Summary judgment is therefore inappropriate.

First, the Plaintiff clearly has made out a constitutional claim under Section 1983 analogous to the common law tort of malicious prosecution. The elements of such a claim are the following: (i) the defendant caused the plaintiff's confinement or prosecution; (ii) the criminal action ended in the plaintiff's favor; (iii) there was no probable cause to support the original arrest, confinement, or prosecution; (iv) the defendant acted with malice; and (v) the plaintiff suffered damages resulting therefrom. *See, e. g., Novitski v. City of Aurora,* 491 F.3d 1244, 1258 (10th Cir. 2007), *citing Pierce,* 359 F.3d at 1291-97. As discussed above, the Plaintiff was arrested without probable cause. Burkhalter caused the Plaintiff's arrest and prosecution by submitting a materially misleading affidavit. The criminal case against the Plaintiff was dismissed before trial, so there is no dispute that the prosecution terminated in his favor. Nor is there any dispute that the Plaintiff would be entitled to damages if the other elements of his claim are established; at a minimum, the Plaintiff would be entitled to nominal damages for violation of his rights under the Fourth Amendment. Thus, the only element of the Plaintiff's claim seriously in dispute in this case is malice, *i. e.*, whether Burkhalter "knowingly or recklessly omit[ted] from [his] arrest affidavit information which, if included, would have vitiated probable cause." *Stewart,* 915 F.2d at 582-83. *See also Pierce,* 359 F.3d at 1297 n.12 (noting the application of "a standard of '*knowingly and intentionally, or with reckless disregard for the truth,*' falsifying or omitting evidence, in the

context of Fourth Amendment challenges" for evaluating the malice element), *quoting Franks,* 438 U.S. at 155-56 [emphasis added].

"Recklessness may be inferred from omission of facts which are 'clearly critical' to a finding of probable cause[,]" *Bruning v. Pixler*, 949 F.2d 352, 357 (10th Cir. 1991), *citing DeLoach v. Bevers,* 922 F.2d 618, 622 (10th Cir. 1990), *cert. denied,* 502 U.S. 814 (1991), *quoting Hale v. Fish,* 899 F.2d 390, 400 (5th Cir. 1990) *and United States v. Reivich,* 793 F.2d 957, 961 (8th Cir. 1986), assuming "that the affiant was aware of such omitted facts." *Id.* at 357 n.4. As has been previously mentioned, Burkhalter claims he does not recall receiving any identifying information from the Gollhardts other than the name "Jack Fletcher." But the Gollhardts claim they gave him information demonstrating not only that the Plaintiff was *not* the perpetrator, but who the actual perpetrator was. Their claim is substantiated by the investigative file produced in the case, which contains copies of the information they gave Burkhalter. This information was "clearly critical" to determining whether there was probable cause to arrest the Plaintiff but was nevertheless omitted from Burkhalter's affidavit. Thus, there is a genuine issue of material fact as to recklessness, and the Plaintiff has made out an actionable constitutional claim under Section 1983.

Second, there is no dispute that at the time Burkhalter submitted his affidavit, "the law was clearly established that an officer would violate a plaintiff's Fourth and Fourteenth Amendment rights by knowingly or recklessly making a false statement in an affidavit in support of an arrest or search warrant, if the false statement were material to the finding of

probable cause[,]" *Id.*, *citing Franks,* 438 U.S. at 155-56, or by "knowingly or recklessly omit[ting] from an arrest affidavit information which, if included, would have vitiated probable cause[.]" *Id., citing Stewart,* 915 F.2d at 582-83.

Third, there is a genuine issue of material fact as to the reasonableness of Burkhalter's actions in attesting to the affidavit. He claims he did nothing more than attest to the truth of the information contained in the affidavit and that it was reasonable to rely on the district attorney, who decided to prosecute the Plaintiff and prepared the affidavit in connection therewith. But as noted above, the information contained in the affidavit was materially misleading, and there is evidence from which it may be inferred that Burkhalter was reckless with respect thereto.[3] Thus, the reasonableness *vel non* of Burkhalter's actions in attesting to the affidavit is a question of fact to be resolved by a jury, and summary judgment in his favor on the issue of qualified immunity is therefore inappropriate.

In summary, the Plaintiff has made out an actionable claim under Section 1983 for a clearly established constitutional right, *i. e.*, that he was arrested without probable cause upon a materially misleading affidavit attested to by Burkhalter. Further, there is a genuine issue of material fact as to recklessness (and therefore reasonableness) on Burkhalter's part, so summary judgment is inappropriate on the claim itself, on the defense of qualified immunity

---

[3] Because there is evidence from which recklessness may be inferred, Burkhalter is not entitled to summary judgment on the issue of punitive damages. *See, e. g., Smith v. Wade,* 461 U.S. 30, 56 (1983) ("We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.").

and on the issue of punitive damages. To this extent, the Motion for Summary Judgment of Defendant, Jerome Burkhalter, and Brief in Support [Docket No. 42] should be denied.

## C. CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment of Defendant Board of County Commissioners of McIntosh County, Oklahoma, and Brief in Support [Docket No. 44] is hereby GRANTED. The Motion for Summary Judgment of Defendant, Jerome Burkhalter, and Brief in Support [Docket No. 42] is hereby DENIED to the extent set forth above with regard to the Plaintiff's claim under Section 1983, but is otherwise hereby GRANTED.

**IT IS SO ORDERED** this 12th day of January, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**